IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWARD J. SAUNDERS,

    Petitioner,                 No. CIV S-07-1948 WBS CHS P

    vs.

M.C. KRAMER, Warden

    Respondent.               FINDINGS AND RECOMMENDATIONS

_____/

I.     INTRODUCTION

        Petitioner Edward Saunders is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Saunders attacks his January 21, 2005 conviction for second degree robbery with a firearm in the Sacramento County Superior Court, case no. 04F02638.

II.     CLAIMS

        Mr. Saunders makes the following claims:

        A.     His conviction was based on unreliable or insufficient evidence; and

        B.     The trial court erred in instructing the jury.

        Upon careful consideration of the record and the applicable law, the undersigned will recommend that Mr. Saunders' petition for habeas corpus relief be denied.

/////

III. FACTUAL AND PROCEDURAL BACKGROUND

    A. Facts

        *Prosecution case-in-chief*

> On March 15, 2004, a Sacramento County Sheriff's deputy responded to a report of a robbery. The deputy met with the 17-year-old victim, S.T., who said that two individuals confronted him in the parking lot of his apartment complex. The victim had gone to the parking lot in order to get a VCR out of his brother's car. The victim recognized defendant from junior high school. Defendant told the victim to give him the keys to the car. The victim refused. Defendant pulled up his shirt and showed the victim a gun. Defendant again said, "Give me your car keys. Don't make me shoot you." The victim again refused, stating, "No," and "I love that car." Defendant asked what else he had, and the victim responded that all he had was a VCR. Defendant took the VCR, told the victim not to tell anyone, and walked away.

        *Defense*

> The only defense witness was psychologist Bruce Behrman, who testified as to perception and eyewitness memory. The court recognized Dr. Behrman as an expert with respect to eyewitness identification. He testified that there is a generally accepted theory of memory and perception, known as constructive memory. The theory identifies the perception, storage, and retrieval stages of memory. Dr. Behrman described a variety of factors that make eyewitness observation more or less reliable. He explained cross-racial identification and how the accuracy levels are lower when the perpetrator is a different race than the victim or witness.

April 25, 2006 opinion of the California Court of Appeal, Third Appellate District, C049305, lodged with respondent's answer as lodged document 4 at 2-3. Mr. Saunders was convicted on January 21, 2005 of second degree robbery with an enhancement for use of a firearm. CT at 166-67.

    B. State Appellate Review

        Mr. Saunders appealed his conviction on August 17, 2005 in the California Court of Appeal, Third Appellate District. Answer, Lodged Doc. 1. That appeal was denied on April 26, 2006. Answer, Lodged Doc. 4. Mr. Saunders then sought review in the California Supreme Court on May 22, 2006. Answer, Lodged Doc. 7. The California Supreme Court denied that

petition on June 28, 2006. Answer, Lodged Doc. 8. Mr. Saunders filed this federal petition on September 18, 2007.

IV. APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

3

## V. DISCUSSION OF PETITIONER'S CLAIMS

### A. Conviction Based on Unreliable Evidence/Insufficient Evidence

#### 1) Description of Claim

Mr. Saunders claims that his conviction was based on unreliable evidence. Specifically he argues that he was convicted solely on the eyewitness identification of the victim and that courts "have long accepted that eyewitness identification evidence is inherently unreliable." Petition at 10. He argues therefore that "it is not reasonable to convict petitioner solely on the evidence that is overwhelmingly recognized as highly unreliable." Id. at 11.

#### 2) State Court Opinion

The California Court of Appeal rejected this claim, stating that:

> In *People v. Gould* (1960) 54 Cal.2d 621, the California Supreme Court held that a testifying witness's out-of-court identification "that cannot be confirmed by an identification [of the defendant] at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime." (*Id.* at p. 631.)
>
> However in *People v. Cuevas* (1995) 12 Cal.4th 252 (*Cuevas*), the court unanimously overruled *Gould* and rejected its rule "that an out-of-court identification is by itself always insufficient evidence to support a conviction. Instead, the sufficiency of an out-of-court identification to support a conviction should be judged by the substantial evidence standard of *People v. Johnson* [(1980) 26 Cal.3d 557, 578]." (*Cuevas,* at p. 277.)
>
> In this case, the victim identified defendant to the investigating officer *and* confirmed his identification at trial. Without citing or discussing *Cuevas,* defendant argues that this *confirmed* but uncorroborated identification is "inherently unreliable" and thus "not substantial evidence to support a criminal conviction." In defendant's view, "[u]ncorroborated eyewitness identification evidence is not 'substantial evidence.'"
>
> Defendant effectively argues that, contrary to *Cuevas,* the victim's eyewitness identification *may not* "be judged by the substantial evidence standard of *People v. Johnson, supra,* 26 Cal.3d at page 578" (*Cuevas, supra,* 12 Cal.4th at p. 277) but *must* be found insufficient as a matter of law (*ibid.*). As an intermediate appellate court, we are bound to follow *Cuevas* and are not free to create a corroboration requirement that is even more stringent than the one formerly required by *Gould.* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

4

> Defendant contends that, even if eyewitness identification does not require corroboration, the circumstances of the present identification "w[ere] not substantial evidence of [defendant's] guilt." We disagree.
>
> "'To determine sufficiency of the evidence, we must inquire whether a rational trier of fact could find defendant guilty beyond a reasonable doubt. In this process we must view the evidence in the light most favorable to the judgment and presume in favor of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. To be sufficient, evidence of each of the essential elements of the crime must be substantial and we must resolve the question of sufficiency in light of the record as a whole.' " (*People v. Carpenter* (1997) 15 Cal.4th 312, 387 (*Carpenter* ), quoting *People v. Johnson* (1993) 6 Cal.4th 1, 38; see *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320 [61 L.Ed.2d 560, 572-574].)
>
> In this case, the victim testified that he recognized defendant because they had gone to junior high school together and had been on the same football team. The victim also recognized defendant's voice: He testified that, during the confrontation, it "[j]ust came back to me just *how* he talked during junior high, *never would change.*" (Italics added.)
>
> Read in context, this description of "how [defendant] talked" refers to the tone, volume or other attribute of his speech, which "never would change" *while he was talking.* The victim did not claim that defendant's voice *had not changed* in the years since he had heard it in junior high school. Defendant's argument that the victim had "said [defendant's] voice would 'never change,' a physical impossibility because [he] was nineteen at the time of the incident," misconstrues the record and has no merit.
>
> Defendant's expert witness acknowledged that the accuracy of eyewitness identification is improved where, as here, the witness recognizes *both* a person's face *and* the person's voice. Because the victim may have seen, but evidently had not heard, defendant in the parking lot prior to the robbery, there is little indication that the voice identification was tainted by the pre-incident exposure that the expert had termed the "bystander effect." Nor was there any indication that the voice identification was less reliable because it was cross-racial. The expert testified that eyewitnesses are less capable of identifying perpetrators of races other than their own, but he did not suggest that this phenomenon applies to aural, as well as visual, cues to identification.

/////

Answer, Lodged Doc. 4 at 6-9.

        3) <u>Applicable Law</u>

"Identification of the defendant as the person who committed the charged crime

5

is always an essential element which the government must establish beyond a reasonable doubt. U.S. v. Alexander, 48 F.3d 1477, 1490 (9th Cir. 1995). The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Prantil v. State of Cal., 843 F.2d 314, 316 (9th Cir. 1988). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275 & n.13.

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict. United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Thus, "[t]he question is not whether we are personally convinced beyond a

1  reasonable doubt" but rather "whether rational jurors could reach the conclusion that these jurors
2  reached." <u>Roehler v. Borg</u>, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court
3  determines sufficiency of the evidence in reference to the substantive elements of the criminal
4  offense as defined by state law.  <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Chein</u>, 373 F.3d at 983.

        4)     <u>Discussion</u>

On direct examination, the victim testified that on the night of the robbery he recognized Mr. Saunders because the two had gone to the same junior high school. RT at 24. The victim then made an in court identification, identifying the robber who showed the victim the gun as Mr. Saunders. <u>Id.</u> at 25. The victim testified that he and Mr. Saunders were even in the same class at one time. <u>Id.</u> The victim also testified that two days after the robbery he saw Mr. Saunders at his apartment complex and recognized him as one of the men who robbed him. <u>Id.</u> at 36. The victim finished his direct testimony by stating that there was no question in his mind Mr. Saunders was one of the men who robbed him and the one who showed him the gun during the robbery. <u>Id.</u> at 39.

"[T]he testimony of one witness, if solidly believed, is sufficient to prove the identity of a perpetrator of crime." <u>U.S. v. Smith</u>, 563 F.2d 1361, 1363 (9th Cir. 1977). Here the witness confidently identified Mr. Saunders as the armed robber he encountered. While Mr. Saunders' defense expert raised concerns about eye witness identifications, there is no evidence that the victim's identification was not accurate, let alone solidly believed.

Further, "[w]hen there is some corroboration of that testimony, even greater reason exists for upholding the verdict of a jury which accepted it." <u>Id.</u> During his direct testimony the victim testified that the armed robber wore "teardrop glasses" similar to those that "sheriffs wore," because they were "kind of reflective in the eyes." RT at 26. When Mr. Saunders was arrested, officers took from him a pair of "tear dropped shaped" glasses, that the victim positively identified as those worn by the armed robber on the night of the robbery. RT at 26, 75.

1   Faced with the direct testimony of the victim a rational juror could have reached
2   the conclusion reached in this case, that Mr. Saunders was guilty of the crime charged. The
3   evidence of the glasses bolsters that conclusion. Mr. Saunders is therefore not entitled to relief
4   on this claim.

B.  Jury Instruction Error

1)  Description of Claim

Mr. Saunders claims the trial court erred in refusing to modify the jury instructions as he requested. Specifically he argues that "it was a miscarriage of justice not to modify" the model jury instructions. Petition at 14. He claims that as a result of this error he was denied his right to a fair trial. Id.

2)  State Court Opinion

In rejecting this claim the California Court of Appeal stated:

> Defendant contends the trial court erred by refusing his request to modify CALJIC No. 2.92-Factors to Consider in Proving Identity by Eyewitness Testimony, by adding the following sentence: "You must view eyewitness testimony with caution and evaluate it carefully." We disagree.
>
> . . . .
>
> Defendant's request was based on *People v. Johnson* (1992) 3 Cal.4th 1183, 1230, fn. 12, in which the trial court modified CALJIC No. 2.92 to include the requested language as the second sentence. On appeal, the defendant raised five challenges to the modified instruction, but none involved the disputed language. Thus, this 1992 *Johnson* case had no occasion to hold, and did not hold, that the modification should be made in future cases. Defendant's claim that *Johnson* "approved" the language has no merit.
>
> The 1992 *Johnson* court noted its earlier observation in *People v. Wright* (1988) 45 Cal.3d 1126 (*Wright*) that "CALJIC No. 2.92 normally provides sufficient guidance on the subject of eyewitness identification factors." (*People v. Johnson, supra,* 3 Cal.4th at pp. 1230-1231, citing *Wright,* at p. 1141.) We conclude the present case is no exception.
>
> *Wright* held that the trial court properly refused the following instruction: " 'Where the prosecution has offered identification testimony, that is, the testimony of an eyewitness that he saw the

8

> defendant commit the act charged, such testimony should be received with caution. An identification by a stranger is not as trustworthy as an identification by an acquaintance. *Mistaken identification is not uncommon, and careful scrutiny of such testimony is especially important.*' " (*Wright, supra,* 45 Cal.3d at p. 1152, fn. 25, italics added.)
>
> Defendant claims *Wright's* rejection of the foregoing instruction is not controlling because he did not request the italicized language. He claims *Wright* actually supports his entitlement to an instruction to "view eyewitness testimony with caution and evaluate it carefully," because such an instruction " 'pinpoint[s] the theory of the defense.' " (*Wright, supra,* 45 Cal.3d at p. 1137.)
>
> However, *Wright* also recognized that, "[i]n a proper instruction, '[w]hat is pinpointed is not specific evidence as such, but the *theory* of the defendant's case.' " (*Wright, supra,* 45 Cal.3d at p. 1137, quoting *People v. Adrian* (1982) 135 Cal.App.3d 335, 338.) Defendant's *theory* was not merely that the testimony must be viewed with caution, but that it must be so viewed *for the reasons stated in CALJIC No. 2.92.* The unmodified instruction given by the court properly set forth those reasons. As *Wright* recognized, "A special cautionary instruction is unnecessary because the 'factors' instruction ... *properly highlights the factors relevant to defendant's concerns about the reliability of eyewitness identification testimony* in a particular set of circumstances." (*Wright, supra,* at p. 1153, italics added.) There was no instructional error.

/////

Answer, Lodged Doc. 4 at 11-14.

        3)      <u>Applicable Law</u>

"[A] defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence. <u>U.S. v. Crandall</u> 525 F.3d 907, 911 (9th Cir. 2008) (quoting <u>United States v. Fejes</u>, 232 F.3d 696, 702 (9th Cir.2000)). However, a state court's determination of whether a requested instruction is allowed under state law cannot form the basis for federal habeas relief. <u>Estelle</u>, 502 U.S. at 67-68; <u>see</u> <u>also</u> <u>Menendez v. Terhune</u> 422 F.3d 1012, 1029 (9th Cir. 2005). Nevertheless a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." <u>Hines v. Enomoto</u>, 658 F.2d

9

667, 672 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980));  See also Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process.")  The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is similar to the analysis used in determining, under Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious effect" on the outcome.  See Thomas v. Hubbard, 273 F.3d 1164, 1179 (9th Cir. 2001), overruled on other grounds by Payton v. Woodford, 299 F.3d 815, 828 n.11 (9th Cir. 2002).  Where, as here, the challenge is a failure to give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

### 4) Discussion

Mr. Saunders' theory of defense was one of mistake identity.  His sole witness was an expert in the area of eyewitness identification.  RT at 100.  The expert witness provided his opinion of the various limitations and errors of eyewitness identification.  RT at 95-115.

The trial court instructed the jury pursuant to CALJIC No. 2.92, which states that:

> Eyewitness testimony has been received in this trial for the purpose of identifying the defendant as the perpetrator of the crime charged.  In determining the weight to be given eyewitness identification testimony, you should consider the believability of the eyewitness as well as other factors which bear upon the accuracy of the witness' identification of the defendant, including, but not limited to, any of the following:
>
> The opportunity of the witness to observe the alleged criminal act and the perpetrator of the act;
>
> The stress, if any, to which the witness was subjected at the time of the observation;
>
> The witness' ability, following the observation, to provide a description of the perpetrator of the act;

> The extent to which the defendant either fits or does not fit the description of the perpetrator previously given by the witness;
>
> The cross-racial or ethnic nature of the identification;
>
> The witness' capacity to make an identification;
>
> Evidence relating to the witness' ability to identify other alleged perpetrators of the criminal act;
>
> The period of time between the alleged criminal act and the witness' identification;
>
> Whether the witness had prior contacts with the alleged perpetrator;
>
> The extent to which the witness is either certain or uncertain of the identification;
>
> Whether the witness' identification is in fact the product of his own recollection; and
>
> Any other evidence relating to the witness' ability to make an identification.

/////

CT at 130-31. Mr. Saunders requested the court add that the jury "[m]ust view eyewitness testimony with caution and evaluate it carefully." CT at 98-99.

The jury instruction given provides a detailed framework to carefully analyze and evaluate eyewitness testimony. The requested supplemental sentence is arguably superfluous. Given the similarity between the requested instruction and the more detailed instruction given by the trial court it cannot be said that the trial court did not instruct the jury on Mr. Saunders' theory of defense.

Regardless, Mr. Saunders has failed to show that the refusal to issue the supplemental instruction so infected the entire trial that the resulting conviction violated his right to due process or that the refusal had a substantial and injurious effect on the outcome. Mr. Saunders was allowed to fully present his theory of defense and the jury was given an instruction that, if not details, supports his theory of defense. Mr. Saunders is therefore not entitled to relief on this claim.

## VI. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 2, 2009

*Charlene H. Sorrentino*
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE